UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

---

**E.B.**, by and through his Next Friend, Victoria Bronsfield, **W.M.** and **F.U.**, by and through their Next Friend, Robert Link, individually, and on behalf of a class of all persons similarly situated,

            Plaintiffs,

v.                                                                                     Case No.:

**BRYAN VAUGHAN**, in his official capacity as Interim Director of the Agency for Persons with Disabilities; **SANDY KOON**, in her official capacity as Superintendent of the Mentally Retarded Defendants Program; and **KEVIN JACKSON**, in his official capacity as clinical director of the Mentally Retarded Defendants Program,

            Defendants.

---

**CLASS ACTION COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF**

**PRELIMINARY STATEMENT**

1.      Plaintiffs, E.B., by and through his next friend, Victoria Bronsfield, W.M. and F.U., by and through their next friend Robert Link, individually, and on behalf of a class of all persons similarly situated, all of whom are involuntarily committed to the care and custody of the State of Florida, Agency for Persons with Disabilities ("APD") and confined at the Mentally Retarded Defendant Program ("MRDP"), pursuant to Section 916.302 of the Florida Statutes or Section 916.303(3) of the Florida Statutes, and all of whom allege they have been the victims of

constitutionally inadequate treatment and conditions, seek declaratory and injunctive relief to enforce their right to constitutionally adequate treatment and conditions, as secured to them by the Fourteenth Amendment to the United States Constitution.

2. Defendants do not provide Plaintiffs, and all other similarly situated residents at MRDP, with constitutionally adequate treatment or training to address their adaptive and behavioral needs.

3. Defendants create treatment plans (i.e., "support plans") for Plaintiffs, and all other similarly situated residents at MRDP, that are generic in nature. Across residents, the support plans share identical treatment and training goals. The objectives identified to meet those goals are also not individualized. The behavioral treatment components of MRDP support plans are insufficient on their face, but, in practice, Defendants even fail to comply with their own generic treatment recommendations in treating Plaintiffs and others similarly situated.

4. The lack of adequate behavioral and adaptive treatment and training results in the unnecessary and excessive use of seclusion and restraints, and impedes Plaintiffs', and others' similarly situated, ability to acquire or maintain the adaptive skills, including behavioral skills, necessary to function outside of a secure forensic facility.

5. Plaintiffs seek a declaratory judgment that Defendants' policy and practice of inadequate treatment and training and the use of unnecessary bodily restraint and seclusion at MRDP violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The Plaintiffs also seek corresponding injunctive relief requiring the Defendants to cease their unlawful conduct and implement measures to prevent continuation of that conduct.

Finally, the Plaintiffs seek their reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988.

## JURISDICTION

6. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 as this action arises under the Constitution and the laws of the United States, and pursuant to 28 U.S.C. § 1343(a)(3) as this action seeks redress for civil rights violations under 42 U.S.C. §§ 1983 & 1988.

7. This Court has jurisdiction over claims seeking declaratory relief and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure.

## VENUE

8. Venue is proper in this District under 28 U.S.C. § 1391(b) and N.D. Fla. Loc. R. 3.1 because a substantial number of the events and omissions giving rise to Plaintiffs' claims occurred in the District.

## PARTIES

**PLAINTIFFS**

9. E.B. was involuntarily committed to APD for competency training on March 5, 2008, after he was found incompetent to stand trial due to mental retardation.[1] In August of

---

[1] The developmental disabilities community strongly encourages use of the term "intellectual disability" in lieu of "mental retardation" or "retardation." *See* Shalock, Luckasson, and Shogren. "The Renaming of 'Mental Retardation:' Understanding the Change to the Term 'Intellectual Disability." Intellectual and Developmental Disabilities. Vol. 45, No. 2: 116-124 (2007). *See also* Pub. Law. 111-256, § 1, Oct. 5, 2010, 124 Stat. 2643 ("Rosa's Law"). For purposes of

2008, E.B. was admitted to MRDP, where he is currently housed. E.B.'s claim is brought through his mother and next friend, Victoria Bronsfield.

10. W.M. was involuntarily committed to APD for competency training on April 1, 2009 after he was found incompetent to stand trial due to mental retardation. On May 13, 2009, W.M. was admitted to MRDP, where he is currently housed. W.M.'s claim is brought through his next friend, Robert Link.

11. F.U. was involuntarily committed to APD for competency training on April 22, 2009 after he was found incompetent to stand trial due to mental retardation. On June 10, 2009, F.U. was admitted to the MRDP, where he is currently housed. F.U.'s claim is brought through his next friend, Robert Link.

**DEFENDANTS**

12. The Defendant, BRYAN VAUGHAN, ("Vaughan") is the Interim Director of APD.[2] APD is responsible for providing training and treatment to all persons involuntarily committed pursuant to Part III of Chapter 916. Pursuant to Section 20.197 of the Florida Statutes, Vaughan is responsible for the overall administration of the affairs of all APD operated facilities, including MRDP, and is responsible for final policy making decisions at APD. He is sued in his official capacity for the purposes of declaratory and injunctive relief.

---

consistency, since the state of Florida and APD still use the term "retardation" or "mental retardation," those terms will be used in this complaint.

[2] Based on information and belief, Vaughn is the Interim Director for APD and, in the near future, the governor of Florida may appoint a permanent director to replace Vaughn. In the event the governor appoints a new APD director, Plaintiffs will immediately file a motion to substitute the newly appointed director for Vaughan.

13.     The Defendant, SANDY KOON, ("Koon") is the Interim Superintendent of MRDP.  In that capacity, she exercises administrative control of and has responsibility for MRDP.[3]  Koon is responsible for the development, implementation, and oversight of all MRDP policies, practices, and procedures, including policies related to treatment programs and behavior management.  She is sued in her official capacity for the purposes of declaratory and injunctive relief.

14.     The Defendant, KEVIN JACKSON ("Jackson"), is the Clinical Director of MRDP.  In that capacity he is responsible for administrative control and supervision of all clinical programs, including treatment programs and behavior management, at MRDP.  He is sued in his official capacity for the purposes of declaratory and injunctive relief.

15.     At all times relevant to this Complaint, the Defendants were acting under color of state law.

## CLASS ACTION ALLEGATIONS

16.     This action is brought by the named Plaintiffs as a class action, pursuant to the provisions of Rule 23(b)(2) of the Federal Rules of Civil Procedure, for injunctive and declaratory relief on behalf of a class of all persons similarly situated.

17.     The class of Plaintiffs consists of all persons who are or will be confined under Chapter 916 of the Florida Statutes to MRDP.

---

[3] Based on information and belief, Koon is the Interim Superintendent for MRDP and, in the near future, may be replaced by a permanent superintendent.  In the event APD hires another person to take over Koon's current position as MRDP superintendent, Plaintiffs will immediately file a motion to substitute the newly hired superintendent for Koon.

18. The Plaintiff class is so numerous that joinder of all members would be impracticable. The population at MRDP currently exceeds sixty individuals.

19. Controlling issues of law and fact are common to all members of the Plaintiff class. The predominant issue is whether Defendants or those acting under their control or direction, have and continue to violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution by failing to provide constitutionally adequate treatment and training for persons with developmental disabilities, and in lieu thereof, use unnecessary seclusion and restraint against those persons.

20. The claims of the individual Plaintiffs are typical of the claims of class members. All claims are based on the same factual and legal theories in that they have all been harmed by the unconstitutional practices alleged in this complaint.

21. The named Plaintiffs, through their next friends, will fairly and adequately protect the interests of the members of the Plaintiff class. The named Plaintiffs have a strong personal interest in the outcome of this action and have no conflicts of interest with members of the Plaintiff class. The named Plaintiffs are all current residents of MRDP.

22. The named Plaintiffs are represented by experienced counsel who specialize in class action litigation concerning conditions, practices, and treatment in institutions.

23. The Defendants have acted on grounds generally applicable to the Plaintiff class as a whole, thereby making appropriate final declaratory and injunctive relief with respect to the class as a whole.

24. The Defendants' customs, policies, and practices of failing to provide constitutionally adequate treatment and training for persons with developmental disabilities and,

in lieu thereof, using unnecessary seclusion and bodily restraint against those persons necessitates injunctive relief directing Defendants to implement remedial measures.

## GENERAL ALLEGATIONS

25. Only persons charged with felony crimes deemed competent to stand trial can proceed through the criminal system. In Florida, if the criminal court finds that a person is incompetent to stand trial, then the court can order that the person receive competency training.

26. Chapter 916 of the Florida Statutes ("Chapter 916") provides the statutory framework for how the criminal court handles persons found incompetent to stand trial in Florida and orders subsequent competency training.

27. Under Chapter 916, through the assistance of expert testimony, a criminal court determines whether a person is incompetent to proceed and, if so, the basis for the person's incompetence.

28. If the criminal court finds that a person is incompetent due to mental retardation[4] or autism, then the court may involuntarily commit such person for competency training.

29. Pursuant to Chapter 916, whenever a person is involuntarily committed due to mental retardation or autism, the Defendants' must retain the person and provide him or her with appropriate training and treatment.

---

[4] Retardation is defined as "significantly sub average general intellectual functioning existing concurrently with deficits in adaptive behavior that manifests before the age of 18 and can reasonably be expected to continue indefinitely." § 393.063(31), Fla. Stat. Every person whose incompetence is the result of retardation has been found to have significant deficits in intellectual and adaptive functioning.

7

30.     The state of Florida has designated MRDP as the secure forensic facility charged with housing and providing training and treatment to such persons, which includes the named Plaintiffs, and the class represented by the named Plaintiffs.

31.     Within 30 days of admission to MRDP, Defendants are required to create an individualized training and treatment program for each resident. Defendants are required to provide an array of services, including medical, vocational, social, educational, behavioral, rehabilitative, and habilitative services with a focus on the residents' return to the criminal court as well as to the community.

### E.B.

32.     E.B. is diagnosed with moderate mental retardation and impulse control disorder. Additionally, E.B. has a psychiatric history of bipolar disorder, depression, and self-injurious behavior.

33.     From the time E.B. was admitted to MRDP, he was involved in a high number of "maladaptive behaviors." Maladaptive behaviors are broadly defined and can include minor behaviors or even behaviors where the person disciplined was not the perpetrator of the incident.

34.     The maladaptive behaviors include creating disturbances by yelling, threats to staff and other residents, and fights with staff and other residents.

35.     In response to these maladaptive behaviors, Defendants put E.B. in seclusion or restraint. Since May 2010, E.B. has been subjected to seclusion or mechanical restraint more than 45 times.

36.     When Defendants put E.B. in seclusion, he is isolated in a room alone and the door is locked or otherwise barricaded to prevent E.B. from leaving.

37.   Defendants use a "restraint chair" when they put E.B. in restraint. A restraint chair is a mechanical restraint device. After a person is placed in the restraint chair in a seated position, the person's arms, shoulders, and legs are then strapped down which completely immobilizes the person's torso and limbs.

38.   Since June of 2010, E.B. has been placed in mechanical restraint approximately 22 times.

39.   Aside from Defendants' use of restraint and seclusion, they have created an inadequate and generic support plan to address E.B.'s behavior.

40.   There is only one objective listed in the plan that directly addresses E.B.'s behavior. This objective states that E.B. is to "progress to the highest stage of the unit-wide behavior program (level 4)."[5]

41.   To implement this objective, the Defendants state that E.B. should meet with a behavior analyst[6] 15 minutes per month and take psychiatric medication.

42.   E.B.'s support plan does not identify what specific, individual behavioral problems will be addressed during these meetings or what specific, individual treatment steps will be taken.

---

[5] The "unit-wide behavior program" is not a behavioral treatment program that utilizes the principles of behavior analysis, but instead, is a level system that tracks the amount of privileges a resident receives based on the number of maladaptive behaviors the resident engages in.

[6] The term "behavior analyst" is the term used for professionals that practice "behavior analysis." Behavior analysis is "provided to assist a person…to learn new behavior that [is] directly related to existing challenging behaviors…[b]ehavior analysis includes the design, implementation and evaluation of systematic environmental modifications for the purposes of producing socially significant improvements in…human behavior." Florida's Agency for Healthcare Administration, *Developmental Disabilities Medicaid Waiver Services and Coverage Limitation Handbook*, 2-21 (May 2010).

43. On its face, E.B.'s support plan is insufficient because it fails to reflect individualized treatment assessments and recommendations, but, in practice, Defendants' treatment falls far shorter because Defendants do not implement their own generic treatment recommendations. For example, E.B. does not and has never met with a behavior analyst on any regular basis, including a monthly basis.

44. Aside from, but also related to E.B.'s behavior, is his need for therapeutic psychological services to address his bipolar disorder and depression. However, E.B. does not meet with a psychologist for this purpose.

45. Defendants do not provide any formal treatment or training to E.B. to improve or maintain his adaptive functioning skills that, in turn, would help him to control his behavior.

46. Defendants fail to provide E.B. with adequate mental healthcare.

47. In the more than two years he has been at MRDP, Defendants have not made attempts to determine the antecedents or causes of E.B's behavior through the professionally accepted procedure of a functional assessment, and then based on that assessment, develop an individualized behavior plan.[7]

48. Instead, Defendants' restrain and seclude E.B. in response to maladaptive behaviors that could be alternatively addressed through adequate treatment and training. Defendants' restrain and seclude E.B. at times when he is calm and does not pose an imminent threat of harm to himself or others.

---

[7] A functional assessment is a systematic process of identifying problem behaviors and the events that reliably predict occurrence and nonoccurrence of those behaviors and maintain the behaviors across time. The purpose of gathering this information is to improve the effectiveness, relevance, and efficiency of individualized behavior plans.

49. Defendants' use of seclusion and restraint has not led to any changes or decreases in E.B.'s behavior, and, in fact, E.B.'s behavior has steadily worsened.

**W.M.**

50. W.M. is diagnosed with mild mental retardation and has a history of depression.

51. From the time W.M. was admitted to MRDP, he was involved in a high number of maladaptive behaviors. In response to these maladaptive behaviors, MRDP staff place him in seclusion or mechanical restraints.

52. The behaviors include creating disturbances by screaming or yelling, threats to staff and other residents, and fights with staff and other residents.

53. The MRDP staff have and continue to place W.M. in seclusion or mechanical restraint following his maladaptive behaviors at the direction and approval of Defendants.

54. When W.M. is placed in seclusion, he is isolated in a room alone and the door is locked or otherwise barricaded to prevent W.M. from leaving.

55. Since January 2010, Defendants have subjected W.M. to seclusion at least 60 times.

56. With few exceptions, Defendants place W.M. in seclusion when he does not pose an imminent threat of harm to himself or others. For example, in June 2010, staff wrote up W.M. for horseplay and verbal threats between him and another resident. Staff placed W.M. in his room. When he was calm, the staff opened his room door and W.M. calmly and independently walked to the seclusion room. W.M. was required to be in the seclusion room for one hour even though he was calm at the time of his placement in the seclusion room.

57. On many other occasions, Defendants have subjected W.M. to periods of seclusion when he was otherwise calm.

58. W.M. has also been subject to extended seclusion on at least four occasions. Each period of extended seclusion lasted between three to six days.

59. Defendants have created an inadequate and generic support plan to address W.M.'s behavior.

60. The plan consists of putting W.M. in the same MRDP level system as every other MRDP client regardless of the nature or severity of their behaviors.

61. There is only one objective listed in the plan that directly addresses W.M.'s behavior. This objective states that W.M. is to progress in the unit-wide behavior program.

62. To implement this objective, W.M.'s June 2009, February 2010, and May 2010 support plans state that W.M. should meet with a behavior analyst 15 minutes per month for purposes of behavioral training and take psychiatric medication.

63. W.M. does not meet with a psychologist[8] or behavior analyst for purposes of behavioral treatment and training.

64. W.M.'s support plan does not identify what specific, individual behavioral problems will be addressed during these meetings or what specific, individual treatment steps will be taken.

65. In the more than two years he has been at MRDP, Defendants have not made attempts to determine the antecedents or causes of W.M.'s behavior through the professionally

---

[8] Psychologists can provide behavioral therapy if they have background in behavioral analysis or are board certified as a behavior analyst.

accepted procedure of a functional assessment, and then, based on that assessment, develop an individualized behavior plan.

66.  Instead, Defendants seclude W.M. in response to maladaptive behavior that Defendants could address through adequate treatment and training. With few exceptions, Defendants seclude W.M. at times when W.M. is calm and does not pose an imminent threat of harm to himself or others.

67.  Defendants' use of seclusion and restraint has not led to any changes or decreases in W.M.'s behavior, and, in fact, W.M.'s behavior has steadily worsened.

### F.U.

68.  F.U. is dually diagnosed with schizo-affective disorder and mild mental retardation. F.U. also has a long history of self-injurious behavior and suicidal ideation.

69.  F.U.'s MRDP records indicate that he has difficulties performing even simple tasks like showering or eating without verbal prompts.

70.  Although F.U's records identify that he has deficits in adaptive functioning skills, F.U. does not participate in any formal treatment or training to improve or maintain his adaptive functioning skills.

71.  F.U. has been involved in over 230 reported instances of "maladaptive" behavior.

72.  MRDP staff have and continue to place F.U. in seclusion or mechanical restraint following his maladaptive behaviors at the direction and approval of Defendants.

73.  Defendants have put F.U. in either seclusion or mechanical restraints more than 40 times.

74. When F.U. is put in seclusion, he is isolated in a room alone and the door is locked or otherwise barricaded to prevent F.U. from leaving.

75. When F.U. is put in mechanical restraint, MRDP staff strap F.U.'s arms, shoulders, waist, and legs to a restraint chair.

76. Between July and November 2010, F.U. was put in the restraint chair over 20 times.

77. F.U. has also been subject to extended seclusion with one duration lasting six days.

78. Defendants have created an inadequate and generic support plan to address F.U.'s behavior. The support plan consists of placing F.U. in the same MRDP level system as every other MRDP client regardless of the nature or severity of their behaviors.

79. There is only one objective listed in the plan that directly addresses F.U.'s behavior. This objective states that F.U. is to progress in the unit-wide behavior program. The interventions to achieve this objective have remained unchanged since the development of his initial support plan in 2009, regardless of F.U.'s behavior.

80. Defendants listed the intervention toward this goal as "psychologist will meet with resident monthly for at least 15 minutes to review progress."

81. In June 2010, Defendants indicated that F.U. had made "no progress" toward his goal and he remained on the lowest level of the level system.

82. Even though the Defendants acknowledged F.U. made no progress in achieving the support plan goal, the Defendants did not alter the interventions to assist F.U. in reaching the goal.

83.     In the nearly two years he has been at MRDP, Defendants have not made attempts to determine the antecedents or causes of F.U.'s behavior through the professionally accepted procedure of functional assessment, and then, based on that assessment, develop an individualized behavior plan.

84.     Instead, Defendants restrain and seclude F.U. in response to maladaptive behavior that Defendants could address through adequate treatment and training. With few exceptions, Defendants restrain or seclude F.U. at times when he is calm and does not pose an imminent threat of harm to himself or others.

85.     Defendants' use of seclusion and restraint has not led to any changes or decreases in F.U.'s behavior, and, in fact, F.U.'s behavior has steadily worsened.

### **DEFENDANTS' VIOLATIONS OF PROFESSIONAL JUDGMENT**

86.     Vaughan, Koon, and Jackson are the officials directly responsible for the adoption and implementation of the treatment and behavior management system in the MRDP.

87.     The Defendants have not developed individualized behavior plans for E.B., W.M., and F.U., or others similarly situated, using generally accepted procedures such as a functional assessment.

88.     The Defendants' failure to utilize these generally accepted methods to modify the behavior of E.B., W.M., F.U. and others similarly situated, is a substantial departure from accepted professional judgment practice and standards.

89.     Vaughn, Koon, and Jackson have adopted a policy or custom relying on a non-individualized, generic program in the MRDP that is ineffective and can be counter-productive for managing the behavior of the clients that have behavioral issues related to their disabilities.

90. The Defendants rely on the excessive use of seclusion and mechanical restraints to manage and punish Plaintiffs' behaviors.

91. The Defendants have adopted a policy of extended seclusion, whereby they authorize the placement of residents in seclusion even when the residents exhibit completely calm and cooperative behavior. The average length of extended seclusion is between two and three days.

92. The Defendants' authorization of the continued and counterproductive use of seclusion and mechanical restraints on E.B., W.M., and F.U. without first requiring the development of an adequate individualized treatment program for E.B., W.M., and F.U. is a substantial departure from accepted professional judgment practice and standards.

93. Vaughan, Koon, and Jackson have adopted a behavior management program in the MRDP that relies on excessive use of seclusion and restraint to control Plaintiffs, and others similarly situated, in lieu of an appropriate, professionally accepted, individualized treatment and behavior management programs.

94. The Defendants have adopted a policy or custom at MRDP that relies on seclusion and restraint as punishment for behaviors that are related to the disabilities of Plaintiffs, and others similarly situated.

95. Defendants have utilized seclusion on many occasions against E.B., W.M., and F.U., and others similarly situated, for punitive purposes rather than for reasons related to protection of selves or others in response to behaviors that do not rise to the level of emergency or crisis.

96. The use of seclusion against E.B., W.M., and F.U. was for the very purpose of punishment for their behavior and not for the purpose of preventing harm to E.B., W.M., and F.U., or others similarly situated.

97. The Defendants violated professional judgment standards by keeping E.B., W.M., F.U., and others similarly situated, in seclusion for a pre-determined amount of time even though they exhibit calm behavior for all or most of the duration of their time in seclusion.

98. The Defendants violated professional judgment standards by placing E.B., W.M., F.U., and others similarly situated, in seclusion when they were calm and not a threat to themselves or others.

99. Defendants' acts and omissions, as set forth in paragraphs 32 through 98, deprived E.B., W.M., F.U., and others similarly situated, of their Constitutional right to adequate treatment and training and to be free from unnecessary bodily restraint.

## CLAIM FOR RELIEF - VIOLATION OF DUE PROCESS CLAUSE

100. Defendants' failure to provide constitutionally adequate treatment or training for Plaintiffs, and others similarly situated, is a substantial departure from accepted professional judgment practice and standards and violates Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

101. Defendants' use of seclusion and restraint against Plaintiffs, and others similarly situated, without an attempt to reduce the behavior using generally accepted alternative treatment modalities is a substantial departure from accepted professional judgment, practice and standards and violates Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

102.    Defendants' punitive seclusion and restraint of Plaintiffs, and others similarly situated, for behavior that was non-threatening to staff, other residents, or Plaintiffs and others similarly situated is a substantial departure from accepted professional judgment, practice and standards and violates Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

103.    Defendants' use of restraint and seclusion as the primary component of behavioral "treatment" for Plaintiffs and others similarly situated, regardless of whether it is having any effect on behavior, is a substantial departure from accepted professional judgment, practice and standards and violates Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

104.    Plaintiffs have no adequate remedy at law.

105.    The Plaintiffs also seek attorneys' fees and costs pursuant to 42 U.S.C. § 1988, which authorizes the award of attorney's fees and costs to prevailing Plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

## REQUESTS FOR RELIEF

WHEREFORE, Plaintiffs request that this Court:

A.    Certify this action as a class action;

B.    Declare that Defendants have violated the due process rights of Plaintiffs, and the class members, under the Fourteenth Amendment to the United States Constitution by subjecting Plaintiffs, and members of the class, to the policies, practices and conditions of confinement described herein;

  C. Permanently enjoin Defendants, their agents, employees, successors and all other persons acting in concert or participation with them from engaging in the unlawful acts described herein;

  D. Retain jurisdiction over Defendants until such time as the Court is satisfied that the unlawful policies, practices, acts and omissions complained of herein no longer exist and will not recur;

  E. Award Plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

  F. Grant such other and further relief as this Court deems just and proper.

          RESPECTFULLY SUBMITTED,

          /s/ Katherine DeBriere
          Katherine DeBriere
          Fla. Bar No.: 58506

          Kristen Lentz
          Fla. Bar No.: 649635

          Peter Sleasman
          Fla. Bar No.: 367931

          Christopher Jones
          Fla. Bar No.: 994642

          Florida Institutional Legal Services, Inc.
          14260 W. Newberry Rd., Ste. #412
          Newberry, FL 32669-2765
          (352) 375-2494 (telephone)
          (352) 331-5202 (facsimile)
          kdebriere@filsinc.org
          klentz@filsinc.org
          psleasman@filsinc.org
          cjones@filsinc.org

Paul E. Liles
Fla. Bar No.:  0921270
Disability Rights Florida, Inc.
1000 N. Ashley Dr., Ste. #640
Tampa, FL 33602-3716
(850) 488-9071 (telephone)
(850) 488-8640 (facsimile)
paull@disabilityrightsflorida.org

**ATTORNEYS FOR PLAINTIFFS**

Dated:  May 5, 2011