**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

_____

**F.A.**, by and through his Next Friend,
Freddie Sims; **J.R.**, by and through his
Next Friend, Bridget Foley; and **W.M.**,
by and through his Next Friend, Robert
Link, individually, and on behalf of a
class of all persons similarly situated,

                         Plaintiffs,

v.                                         **Case No.: 4:11-cv-00198-RS-WCS**

**MIKE HANSEN**, in his official capacity
as Acting Director of the Agency for
Persons with Disabilities; **SANDY KOON**,
in her official capacity as Superintendent of
the Mentally Retarded Defendant Program;
and **KEVIN JACKSON**, in his official
capacity as clinical director of the Mentally
Retarded Defendant Program,

                         Defendants.

_____

**FIRST AMENDED CLASS ACTION COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF**

**<u>PRELIMINARY STATEMENT</u>**

1.   F.A., by and through his Next Friend, Freddie Sims; J.R., by and through his Next

      Friend, Bridget Foley; and W.M. by and through his Next Friend, Robert Link;

      each individually, and on behalf of a class of all persons similarly situated, all of

      whom are involuntarily committed to the care and custody of the State of Florida,

      Agency for Persons with Disabilities ("APD") and confined at the Mentally

Retarded Defendant Program ("MRDP"), pursuant to Chapter 916 of the Florida Statutes ("Chapter 916"), and all of whom allege they have been the victims of constitutionally inadequate treatment and conditions, seek declaratory and injunctive relief to enforce their right to constitutionally adequate treatment and conditions, as secured to them by the Fourteenth Amendment to the United States Constitution.

2. Defendants do not provide Plaintiffs, and all other similarly situated residents at MRDP, with constitutionally adequate treatment or training to address their mental health, adaptive, and behavioral needs.

3. Defendants do not assess Plaintiffs' individual and complex mental health needs to use in the development of individualized treatment modalities for each Plaintiff.  Instead, Defendants create treatment plans (i.e., "support plans") for Plaintiffs, and all other similarly situated residents at MRDP, that are generic in nature.  Across residents, the support plans share identical treatment and training goals.  MRDP does not individualize the treatment objectives to meet those goals. MRDP support plans are insufficient on their face, but, in practice, Defendants even fail to comply with their own generic treatment recommendations in treating Plaintiffs and others similarly situated.

4. The lack of adequate mental health, behavioral, and adaptive treatment and training results in the unnecessary and excessive use of seclusion and restraints, and impedes the ability of Plaintiffs, and others similarly situated, to maintain or

improve their mental health as well as acquire or maintain adaptive functioning skills, including behavioral skills.

5.  Plaintiffs seek a declaratory judgment that Defendants' policy and practice of inadequate treatment and training and the use of unnecessary bodily restraint and seclusion at MRDP violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  The Plaintiffs also seek corresponding injunctive relief requiring the Defendants to cease their unlawful conduct and implement measures to prevent continuation of that conduct.  Finally, the Plaintiffs seek their reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988.

## JURISDICTION

6.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 as this action arises under the Constitution and the laws of the United States, and pursuant to 28 U.S.C. § 1343(a)(3) as this action seeks redress for civil rights violations under 42 U.S.C. §§ 1983 & 1988.

7.  This Court has jurisdiction over claims seeking declaratory relief and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure.

## VENUE

8.  Venue is proper in this District under 28 U.S.C. § 1391(b) and N.D. Fla. Loc. R. 3.1 because a substantial number of the events and omissions giving rise to Plaintiffs' claims occurred in the District.

## PARTIES

**PLAINTIFFS[1]**

9.  F.A. was involuntarily committed to APD for competency training on April 12,
    2011 after he was found incompetent to stand trial due to mental retardation.  On
    April 19, 2011, F.A. was admitted to MRDP, where he is currently housed.
    F.A.'s claim is brought through his next friend and father, Freddie Sims.

10. J.R. was involuntarily committed to APD for competency training on March 2,
    2009, after he was found incompetent to stand trial due to mental retardation.  On
    December 10, 2010, J.R. was admitted to MRDP, where he is currently housed.
    J.R.'s claim is brought through his next friend and mother, Bridget Foley.

11. W.M. was involuntarily committed to APD for competency training on April 1,
    2009 after he was found incompetent to stand trial due to mental retardation.  On
    May 13, 2009, W.M. was admitted to MRDP, where he is currently housed.
    W.M.'s claim is brought through his next friend, Robert Link.

**DEFENDANTS**

12. The Defendant, Mike Hansen, ("Hansen") is the Acting Director of APD.[2]  APD
    is responsible for providing training and treatment to all persons involuntarily

---

[1] Plaintiffs' First Amended Complaint does not include individual factual claims for
named Plaintiffs, E.B. and F.U., because the individual factual claims of E.B. and F.U.
have been voluntarily dismissed.  A Notice of Voluntary Dismissal Without Prejudice as
to the individual factual claims of E.B. and F.U. has been filed simultaneous to this
complaint.  Plaintiffs' First Amended Complaint now contains individual factual claims
for two new named Plaintiffs, J.R. and F.A.

committed pursuant to Part III of Chapter 916.  Pursuant to Section 20.197 of the

Florida Statutes, Hansen is responsible for the overall administration of the affairs

of all APD operated facilities, including MRDP, and is responsible for final policy

making decisions at APD.  He is sued in his official capacity only.

13. The Defendant, SANDY KOON, ("Koon") is the Superintendent of MRDP.  In

that capacity, she exercises administrative control of and has responsibility for

MRDP.  Koon is responsible for the development, implementation, and oversight

of all MRDP policies, practices, and procedures, including policies related to

treatment programs and behavior management.  She is sued in her official

capacity only.

14. The Defendant, KEVIN JACKSON ("Jackson"), is the Clinical Director of

MRDP.  In that capacity he is responsible for administrative control and

supervision of all clinical programs, including treatment programs and behavior

management, at MRDP.  He is sued in his official capacity only.

15. At all times relevant to this First Amended Complaint, the Defendants were acting

under color of state law.

## CLASS ACTION ALLEGATIONS

16. This action is brought by the named Plaintiffs as a class action, pursuant to the

provisions of Rule 23(b)(2) of the Federal Rules of Civil Procedure, for injunctive

and declaratory relief on behalf of a class of all persons similarly situated.

---

[2] On July 28, 2011, Mike Hansen was appointed by Governor Rick Scott as the Acting
Director for APD.

17. The class of Plaintiffs consists of all persons who are or who will be confined to MRDP under Chapter 916.

18. The Plaintiff class is so numerous that joinder of all members would be impracticable. The population at MRDP currently exceeds sixty individuals.

19. Controlling issues of law and fact are common to all members of the Plaintiff class. The predominant issue is whether Defendants, or those acting under their control or direction, have violated and continue to violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution by failing to provide constitutionally adequate treatment and training for persons with developmental disabilities and, in lieu thereof, use unnecessary seclusion and restraint against those persons.

20. The claims of the individual Plaintiffs are typical of the claims of class members. All claims are based on the same factual and legal theories in that the Plaintiffs have all been harmed by the unconstitutional practices alleged in this First Amended Complaint.

21. The named Plaintiffs, through their next friends, will fairly and adequately protect the interests of the members of the Plaintiff class. The named Plaintiffs have a strong personal interest in the outcome of this action and have no conflicts of interest with members of the Plaintiff class. The named Plaintiffs are all current residents of MRDP.

22. The named Plaintiffs are represented by experienced counsel that specialize in class action litigation concerning conditions, practices, and treatment in institutions.

23. The Defendants have acted on grounds generally applicable to the Plaintiffs' class as a whole, thereby making appropriate final declaratory and injunctive relief with respect to the class as a whole.

24. The Defendants' customs, policies, and practices of failing to provide constitutionally adequate treatment and training for persons with developmental disabilities and, in lieu thereof, using unnecessary seclusion and bodily restraint against those persons necessitates injunctive relief directing Defendants to implement remedial measures.

## FACTUAL ALLEGATIONS

### Overview of Commitment to MRDP Pursuant to Chapter 916

25. Only persons charged with felony crimes deemed competent to stand trial can proceed through the criminal system.  In Florida, if the criminal court finds that a person is incompetent to stand trial, then the court can order that the person receive competency training.

26. Chapter 916 provides the statutory framework for how the criminal court handles persons found incompetent to stand trial in Florida and orders subsequent competency training.

27. Under Chapter 916, through the assistance of expert testimony, a criminal court determines whether a person is incompetent to proceed and, if so, the basis for the person's incompetence.

28. If the criminal court finds that a person is incompetent due to mental retardation[3] or autism, then the court may involuntarily commit such person for competency training.

29. Pursuant to Chapter 916, whenever a person is involuntarily committed due to mental retardation or autism, the Defendants must retain the person and provide him or her with appropriate training and treatment.

30. The state of Florida has designated MRDP as the secure forensic facility charged with housing and providing training and treatment to such persons, which includes the named Plaintiffs, and the class represented by the named Plaintiffs.

31. Shortly after admission to MRDP, Defendants are required to create an individualized training and treatment program for each resident. Defendants are required to provide an array of services, including medical, vocational, social, educational, behavioral, rehabilitative, and habilitative services with a focus on the residents' return to the criminal court as well as to the community.

---

[3] Retardation is defined as "significantly sub average general intellectual functioning existing concurrently with deficits in adaptive behavior that manifests before the age of 18 and can reasonably be expected to continue indefinitely." Fla. Stat. § 393.063(31). Thus, every person whose incompetence is the result of retardation has been found to have significant deficits in intellectual and adaptive functioning.

**F.A.**

32. F.A. is diagnosed with mild mental retardation, bipolar disorder, ADHD, and conduct disorder.  He is 18 years old.

33. From the time F.A. was admitted to MRDP, he was involved in a high number of behaviors that Defendants deem maladaptive.

34. The majority of F.A.'s maladaptive behaviors involve agitating others and threats to staff and other residents.

35. Defendants have failed to conduct adequate psychological, psychiatric, and behavioral assessments for F.A. that consider his complex mental health needs. Although F.A. has been diagnosed with mild mental retardation, bipolar disorder, ADHD, and conduct disorder, the Defendants have failed to adequately assess these diagnoses and then, using those assessments, develop appropriate treatment interventions.

36. Instead of developing an individualized treatment plan based on assessments of F.A.'s complex needs, Defendants have created an inadequate and generic support plan.  F.A.'s support plan does not specify what individual behavioral, adaptive, and mental health needs will be addressed or what specific, individual treatment steps will be taken to address those needs.  The treatment objectives and goals listed in F.A.'s support plan are substantially similar or, in some places, identical to the treatment and objective goals listed in other residents' support plans.

37. Although F.A.'s diagnoses, trauma history, and problematic behavior indicate a need for individual or group therapy, F.A. does not participate in either type of therapy because Defendants do not provide it.

38. Although Defendants have attempted to draft a behavior plan for F.A., the plan falls well below professional judgment standards.  It is not based on the professionally accepted procedure of an individualized functional assessment that includes an assessment of how F.A.'s mental health diagnoses may impact his behavior.

39. Defendants also fail to adequately execute F.A.'s behavior plan.  The plan's strategies for "reinforcement of appropriate behavior" have not been implemented.  There is no mechanism to track whether the behavior plan results in the improvement of or changes to F.A.'s behavior.

40. Rather than provide F.A. with adequate treatment and training to help him learn to manage his behaviors, Defendants instead subject F.A. to seclusion.  Since April 2011, F.A. has been subjected to seclusion at least 18 times.

41. When Defendants put F.A. in seclusion, he is isolated in a room alone and the door is locked or otherwise barricaded to prevent F.A. from leaving.

42. As a part of F.A.'s behavioral plan, Defendants explicitly authorize F.A.'s seclusion for behaviors like yelling, pacing halls, slamming doors, walking away from staff, and spitting or cursing at others.  These behaviors do not pose an imminent threat of harm to F.A. or others.

43. Defendants use seclusion as a punitive measure and as a "treatment" response to behavior that should be addressed through adequate behavioral programming.

44. Defendants' failure to provide adequate treatment and training to F.A. leads to Defendants' use of unnecessary seclusion against F.A.  F.A.'s behavioral problems, mental health condition, and other deficits have not changed since F.A.'s admission to MRDP.

**J.R.**

45. J.R. is diagnosed with moderate mental retardation, seizure disorder, and has a history of bipolar disorder.  He is 19 years old.

46. From the time J.R. was admitted to MRDP, he was involved in a high number of behaviors that Defendants deem maladaptive.

47. The majority of J.R.'s maladaptive behaviors involve agitating others and threats to staff and other residents.

48. Defendants have failed to conduct adequate psychological, psychiatric, and behavioral assessments for J.R. that consider his complex mental health needs. Although J.R. has been diagnosed with moderate mental retardation and history of bipolar disorder, the Defendants have failed to adequately assess these diagnoses and then, using those assessments, develop appropriate treatment interventions to address them.

49. Instead of developing an individualized treatment plan based on assessments of J.R.'s complex needs, Defendants have created an inadequate and generic support plan.  J.R.'s support plan does not specify what individual behavioral, adaptive,

and mental health needs will be addressed or what specific, individual treatment steps will be taken to address those needs.  The treatment objectives and goals listed in J.R.'s support plan are substantially similar or, in some places, identical to the treatment and objective goals listed in other residents' support plans.

50. Although J.R.'s diagnoses and problematic behavior indicate a need for individual or group therapy, J.R. does not participate in either type of therapy because Defendants do not provide it.

51. Although Defendants have attempted to draft a behavior plan for J.R., the plan falls well below professional judgment standards.  It is not based on the professionally accepted procedure of a functional assessment that includes an assessment of how J.R.'s bipolar disorder may impact his behavior.  Additionally, although J.R.'s current seizure medication can cause problems in behavior, Defendants have never conducted an assessment to determine if J.R.'s behaviors are related to his medication.

52. Defendants fail to adequately execute J.R.'s behavior plan.  The plan's strategies for "reinforcement of appropriate behavior" have not been implemented.  There is no mechanism to track whether the behavior plan results in the improvement of or changes to J.R.'s behavior.

53. J.R. exhibits significant deficits in adaptive skills related to activities of daily living, like toileting, grooming, and cleaning up after himself.  Defendants have not conducted an assessment to determine what specific adaptive deficits J.R.

possesses or his capacity for attaining new skills.  Defendants do not provide

habilitative training to J.R. to address these deficits.[4]

54.  Rather than provide J.R. with adequate treatment and training to help him learn to

manage his behaviors, Defendants instead subject J.R. to seclusion.  Since

December 2010, J.R. has been subjected to seclusion at least 49 times.

55.  When Defendants put J.R. in seclusion, he is isolated in a room alone and the door

is locked or otherwise barricaded to prevent J.R. from leaving.  On several

occasions, J.R. has been observed crying while in seclusion.

56.  As a part of J.R.'s behavioral plan, Defendants explicitly authorize J.R.'s

seclusion for behaviors like yelling, pacing halls, slamming doors, walking away

from staff, and spitting or cursing at others.  These behaviors do not pose an

imminent threat of harm to J.R. or others.

57.  Defendants use seclusion as a punitive measure and as a "treatment" response to

behavior that should be addressed through adequate behavioral programming.

58.  At times, Defendants use metal handcuffs to restrain J.R. while placing him in

seclusion.  In June 2011, J.R. was put in seclusion while restrained in metal cuffs.

For the first 20 minutes of the seclusion period, Defendants left J.R. in the metal

cuffs although he posed no threat of harm to himself or others around him as he

was barricaded in a seclusion room.

---

[4] Habilitative training is the practice of teaching new skills to individuals who have
longstanding, persistent deficits in adaptive functioning skills.  Habilitative training is
typically associated with persons who have been diagnosed with a developmental
disability, like mental retardation or autism.

59. Defendants' use seclusion as a punitive measure in response to behavior that does not pose a threat of harm to others. For example, in June 2011, J.R. defecated on himself and was taken to the shower to be cleaned. While in the shower, he again defecated on himself. After he was clean and dressed and as he was walking back from the shower, J.R. defecated on himself a third time. When he refused to shower and threatened to spit, security was called and he was told to go to the seclusion room. J.R. independently walked to the seclusion room where he was forced to stay for 20 minutes.

60. Defendants' failure to provide adequate treatment and training to J.R. leads to the Defendants' use of unnecessary seclusion against J.R. J.R.'s behavioral problems, mental health condition, and other deficits have not changed since J.R.'s admission to MRDP.

**W.M.**

61. W.M. is diagnosed with mild mental retardation and has a history of depression. W.M. also has a history of head injury and psychological trauma. He is 23 years old.

62. From the time W.M. was admitted to MRDP, he was involved in a high number of behaviors that Defendants deem maladaptive.

63. The behaviors include creating disturbances by screaming or yelling, threats to staff and other residents, and fights with staff and other residents.

64. Defendants have failed to conduct adequate psychological, psychiatric, and behavioral assessments for W.M. that consider his complex mental health needs.

Although W.M. has been diagnosed with mild mental retardation and depression and has a history of both head injury and psychological trauma, the Defendants have failed to adequately assess these diagnoses and histories, and then use those assessments to develop appropriate treatment interventions.

65. Instead of developing an individualized treatment plan based on assessments of W.M.'s complex needs, Defendants have created an inadequate and generic support plan.  W.M.'s support plan does not specify what individual behavioral, adaptive, and mental health needs will be addressed or what specific, individual treatment steps will be taken to address those needs.  The treatment objectives and goals listed in W.M.'s support plan are substantially similar or, in some places, identical to the treatment and objective goals listed in other residents' support plans.

66. Although W.M.'s diagnoses and problematic behavior indicate a need for individual or group therapy, W.M. does not participate in either type of therapy because Defendants do not provide it.

67. In the more than two years he has been at MRDP, Defendants have not made attempts to determine the causes of W.M.'s behavior through the professionally accepted procedure of a functional assessment, and then, based on that assessment, develop an individualized behavior plan.

68. Rather than provide W.M. with adequate treatment and training to help him learn to manage his behaviors, Defendants instead subject W.M. to seclusion.  Since January 2010, W.M. has been subjected to seclusion at least 60 times.

69. When W.M. is put in seclusion, he is isolated in a room alone and the door is locked or otherwise barricaded to prevent W.M. from leaving.

70. Defendants put W.M. in seclusion when he does not pose an imminent threat of harm to himself or others.  For example, in June 2010, staff wrote up W.M. for horseplay and verbal threats between him and another resident.  Staff put W.M. in his room.  When he was calm, the staff opened his room door and W.M. calmly and independently walked to the seclusion room.  W.M. was required to be in the seclusion room for one hour even though he was calm at the time of his placement in the seclusion room.

71. On many other occasions, Defendants have subjected W.M. to periods of seclusion when he was otherwise calm.

72. W.M. has also been subject to extended seclusion on at least four separate occasions.  Each period of extended seclusion lasted between three to six days.

73. Defendants' failure to provide adequate treatment and training to W.M. leads to the Defendants' use of unnecessary seclusion against W.M.  W.M.'s behavioral problems, mental health condition, and other deficits have not changed since W.M.'s admission to MRDP.

## GENERAL ALLEGATIONS ABOUT THE TREATMENT, TRAINING, AND USE OF SECLUSION AT MRDP

74. Defendants are the officials directly responsible for the adoption and implementation of the treatment and training programs at MRDP.

75. Defendants fail to consider the complex psychological, psychiatric, and behavioral needs of Plaintiffs, and others similarly situated.  Plaintiffs, and others similarly situated, have extremely complex needs and require thorough psychiatric assessments, assessments for trauma and substance abuse, neurological assessments, and neuropsychological assessments.  For individuals, like Plaintiffs, who have complex needs, professional judgment requires that treatment selection be based on thorough assessment.  Since Defendants fail to provide these thorough individualized assessments, their treatment plans also substantially depart from accepted professional judgment standards.

76. Defendants have adopted a policy or custom that relies on a non-individualized, generic treatment of Plaintiffs, and others similarly situated.  The objectives and measures identified by Defendants in MRDP's generic treatment plans are substantially similar and, at times identical, across Plaintiffs and others similarly situated.  The identical treatment objectives and measures suggest that Defendants select treatment methods from a set of pre-determined options rather than build treatment plans around the individual needs of Plaintiffs and others similarly situated.

77. Defendants do not provide Plaintiffs, and others similarly situated, with psychological, psychiatric, habilitative, and behavioral services that are sufficient in intensity or quality.  Even the generic treatment measures recommended by Defendants are rarely implemented.

17

78. Defendants have adopted a policy and custom that relies on restraint and seclusion when the generic treatment plans and programs for Plaintiffs, and others similarly situated, fail and the Plaintiffs, and others similarly situated, engage in maladaptive behaviors.

79. Defendants have not developed individualized behavior plans for Plaintiffs, or others similarly situated, using generally accepted procedures such as a functional assessment.  Defendants' failure to utilize these professionally accepted methods to modify the behavior of Plaintiffs, and others similarly situated, is a substantial departure from accepted professional judgment practice and standards.

80. Defendants do not utilize an interdisciplinary approach to develop support plans and behavior programs that incorporate the psychological, psychiatric, and behavioral health needs of individuals dually diagnosed with mental retardation and mental illness.  Instead, the Defendants' policy is to punish individuals for behaviors that manifest as a result of these dual diagnoses by authorizing the use of seclusion and restraint for behaviors that do not pose an imminent threat of harm to other residents or staff.

81. The Defendants' authorization of the continued and counterproductive use of seclusion and mechanical restraints on Plaintiffs without first requiring the development of an adequate individualized treatment program for Plaintiffs is a substantial departure from accepted professional judgment practice and standards.

82. Defendants' failure to conduct individualized assessments and make a determination that Plaintiffs, and others similarly situated, would benefit from the

generic procedures set forth in the behavior plan, creates a self-defeating situation for Plaintiffs, and others similarly situated, that can lead to further psychological damage.

83. Defendants violate professional judgment standards by placing Plaintiffs, and others similarly situated, in seclusion when they were calm and not a threat to themselves or others.

84. Defendants have adopted a policy or custom at MRDP that relies on seclusion and restraint as punishment for behaviors that are related to the disabilities of Plaintiffs, and others similarly situated.

85. Defendants have utilized seclusion on many occasions against Plaintiffs, and others similarly situated, for punitive purposes rather than for reasons related to protection of Plaintiffs or others in response to behaviors that do not rise to the level of emergency or crisis.

86. Defendants' use of seclusion against Plaintiffs, and others similarly situated, is for the very purpose of punishment for their behavior and not for the purpose of preventing harm to Plaintiffs, and others similarly situated.

87. Defendants' acts and omissions, as set forth in paragraphs 1-86 of the First Amended Complaint, deprive Plaintiffs, and others similarly situated, of their Constitutional right to adequate treatment and training and to be free from unnecessary bodily restraint.

## CLAIM FOR RELIEF - VIOLATION OF DUE PROCESS CLAUSE

88. Defendants' failure to provide constitutionally adequate treatment or training for Plaintiffs, and others similarly situated, is a substantial departure from accepted professional judgment practice and standards and violates Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

89. Defendants' use of seclusion and restraint against Plaintiffs, and others similarly situated, without an attempt to reduce the behavior using generally accepted alternative treatment modalities is a substantial departure from accepted professional judgment, practice and standards and violates Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

90. Defendants' punitive seclusion and restraint of Plaintiffs, and others similarly situated, for behavior that is non-threatening to staff, other residents, or Plaintiffs and others similarly situated is a substantial departure from accepted professional judgment, practice and standards and violates Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

91. Defendants' use of seclusion and restraint as the primary component of behavioral "treatment" for Plaintiffs and others similarly situated is a substantial departure from accepted professional judgment, practice and standards and violates Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

92. Plaintiffs have no adequate remedy at law.

93. The Plaintiffs also seek attorneys' fees and costs pursuant to 42 U.S.C. § 1988, which authorizes the award of attorney's fees and costs to prevailing Plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

**REQUESTS FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court:

A.      Certify this action as a class action;

B.      Declare that Defendants have violated the due process rights of Plaintiffs, and the class members, under the Fourteenth Amendment to the United States Constitution by subjecting Plaintiffs, and members of the class, to the policies, practices and conditions of confinement described herein;

C.      Permanently enjoin Defendants, their agents, employees, successors and all other persons acting in concert or participation with them from engaging in the unlawful acts described herein;

D.      Retain jurisdiction over Defendants until such time as the Court is satisfied that the unlawful policies, practices, acts and omissions complained of herein no longer exist and will not recur;

E.      Award Plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

F.      Grant such other and further relief as this Court deems just and proper.

RESPECTFULLY SUBMITTED,


/s/ Katherine DeBriere
Katherine DeBriere
Fla. Bar No.:  58506

Kristen Lentz
Fla. Bar No.:  649635

Peter Sleasman
Fla. Bar No.:  367931

Christopher Jones
Fla. Bar No.:  994642

Florida Institutional Legal Services, Inc.
14260 W. Newberry Rd., Ste. #412
Newberry, FL 32669-2765
(352) 375-2494 (telephone)
(352) 331-5202 (facsimile)
kdebriere@filsinc.org
klentz@filsinc.org
psleasman@filsinc.org
cjones@filsinc.org

Paul E. Liles
Fla. Bar No.:  0921270
Disability Rights Florida, Inc.
1000 N. Ashley Dr., Ste. #640
Tampa, FL 33602-3716
(850) 488-9071 (telephone)
(850) 488-8640 (facsimile)
paull@disabilityrightsflorida.org

**ATTORNEYS FOR PLAINTIFFS**


Dated:  August 3, 2011

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of August 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and will serve this First Amended Complaint along with summons upon Defendants pursuant to Rule 4(c) of the Federal Rules of Civil Procedure.

/s/ Katherine DeBriere
Katherine DeBriere