IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

F.A., by and through his Next Friend,
Freddie Sims., et al.,

    Plaintiff,

vs.                                            CASE NO. 4:11cv198/RS-WCS

MIKE HANSEN, in his official
capacity as Acting Director for the
Agency for Persons with Disabilities,
et al.,

    Defendants.
_____

## **ORDER**

Before me are the Defendants' Motion to Dismiss Amended Complaint (Doc. 29) and Plaintiffs' Response in opposition (Doc. 30).

### Standard of Review

To survive a motion to dismiss, a complaint must contain sufficient facts, which accepted as true, state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569, 127 S. Ct. 1955, 1974 (2007). Granting a motion to dismiss is appropriate if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984). In making this determination, the court must accept all factual

allegations in the complaint as true and in the light most favorable to Plaintiff. *Christopher v. Harbury*, 536 U.S. 403, 406, 122 S. Ct. 2179, 2182 (2003).

## Background

Plaintiffs are individuals involuntarily committed to the care and custody of the State of Florida, Agency for Persons with Disabilities ("APD"). They are in the Mentally Retarded Defendant Program ("MRDP") pursuant to FLA. STAT. § 916 et seq. (Doc. 16, ¶ 1). Plaintiffs claim that Defendants fail to provide adequate treatment or training in violation of the Due Process clause of the Fourteenth Amendment. *Id.* at ¶ 88.

## Analysis

Plaintiffs and Defendants agree that *Youngberg v. Romeo*, 457 U.S. 307 (1982), is the touchstone for cases such as these. *Youngberg* and its progeny firmly established that mentally retarded individuals in state custody have, under the Fourteenth Amendment, liberty interests in "reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these interests." *Id.* at 324. However, these liberty interests are not absolute.

> "There are occasions in which it is necessary for the State to restrain the movement of residents -- for example, to protect them as well as others from violence. Similar restraints may also be appropriate in a training program. And an institution cannot protect its residents from all danger of violence if it is to permit them to have any freedom of movement. The question then is not simply whether a liberty interest has been infringed but whether the extent or nature of the restraint or

    lack of absolute safety is such as to violate due process." *Id*.
    at 320.

  The question presented in *Youngberg* is identical to the one presented here: whether the extent or nature of the restraint and the lack of safety or training at Defendants' program violate Plaintiffs' due process.  The answer to this question is determined by balancing Plaintiffs' liberty interests against the relevant state interests.

  Courts play a limited role in weighing these interests.  Judges are not better qualified than professionals in making decisions regarding the restraint and training of the in-custody mentally retarded.  *See id* at 323.  For this reason, "courts must show deference to the judgment exercised by a qualified professional.[1]"  *Id*. at 322.  Likewise, Defendants must comply with the advice of professionals.  They "may not restrain residents except when and to the extent professional judgment deems this necessary to assure such safety or to provide needed training."  *Id*. at 324.  In addition, Defendants have a duty to provide "such training as an appropriate professional would consider reasonable to ensure [Plaintiffs'] safety and to facilitate [Plaintiffs'] ability to function free from bodily restraints."  *Id*.

  The decisions of professions are "presumptively valid."  *Id*. at 322-23.  "Liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate

---

[1] A 'professional' decisionmaker is "a person competent, whether by education, training or experience, to make the particular decision at issue. Long-term treatment decisions normally should be made by persons with degrees in medicine or nursing, or with appropriate training in areas such as psychology, physical therapy, or the care and training of the retarded. Of course, day-to-day decisions regarding care -- including decisions that must be made without delay -- necessarily will be made in many instances by employees without formal training but who are subject to the supervision of qualified persons. *Youngberg*, 457 U.S. at 323, n.30.

that the person responsible actually did not base the decision on such a judgment." *Id*. at 330. The Court's role is limited to only "'make certain that professional judgment in fact was exercised,' not to second-guess the outcome of that judgment." *Johnson v. Florida*, 348 F.3d 1334, 1339 (11th Cir. 2003) (*quoting Youngberg* at 321).

Here, Defendants assert that Plaintiffs have come up short by not sufficiently alleging what the professional standard is and by not pleading non-conclusory facts which establish that Defendants substantially departed from that standard. (Doc. 29, p. 4, 14-21). Plaintiffs allege that part of the professional standard is an "individualized functional assessment which includes how [a plaintiff's] mental health diagnoses may impact his behavior." (*See* Doc.16, ¶ 38). Similarly they contend that the professional standard requires individualized behavior plans and individualized treatment programs. *Id*. at ¶79 & 81. Plaintiffs cite no binding authority, either in medical literature or case law for their position. Rather, in their response the motion, Plaintiffs cite a string of out-of-jurisdiction cases which stand for the general proposition that individuals in the custody of a state's program for mentally retarded persons must receive some form of individualized treatment or training. (Doc. 30, p. 12, *citing Sharp v. Weston*, 233 F.3d 1166 (9th Cir. 2000); *Thomas S. v. Flaherty*, 699 F. Supp. 1178 (W.D.N.C. 1988); *Lelsz v. Kavanag*h, 673 F. Supp. 828 (N.D. Tex. 1987)).

While not binding on this court, those out -of-circuit decisions are sufficient to make Plaintiffs' claim regarding the baseline standard of care plausible. Defendants contend that MRDP establishes individualized behavior contracts, individualized training procedures, and individualized interventions for each resident. (Doc. 29, p. 6). If true,

this blunts much of Plaintiffs' argument regarding a substantial departure from the standard of care.  However, at this stage, Plaintiffs' claims are plausible.  A different outcome may result when the record contains evidence about the professional judgments made by Defendants.

The Motion to Dismiss (Doc. 29) is **DENIED**.

**ORDERED** on September 29, 2011.

/S/ Richard Smoak
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**